## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **LADARIUS JOHNSON; IRMA LOPEZ; PEDRO LOPEZ; TERRY BRACEY; ROSHAWN POLITE; BRANDI WEST; and BRITTNY ARRIETA,** | § § § § § § | |
| **Plaintiffs,** | § § | **NO. _____** |
| **vs.** | § § | |
| **TYSON FOODS, INC.,** | § § | |
| **Defendant.** | § § | |

## DEFENDANT TYSON FOODS, INC.'S NOTICE OF REMOVAL

Defendant Tyson Foods, Inc. ("Tyson") removes this civil action under 28 U.S.C. §§ 1331, 1332, 1441, 1442, and 1446. This Court has subject matter jurisdiction, and the case is removable because:

(1)     Complete diversity of citizenship exists, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs (28 U.S.C. § 1332);

(2)     Plaintiffs' Original Petition ("Petition") challenges actions taken by Tyson at the direction of a federal officer, for which Tyson will have a colorable federal defense (28 U.S.C. § 1442(a)(1)); and

(3)     The Petition raises substantial and disputed issues of federal law related to national emergency declarations, federal critical infrastructure designations, and the Defense Production Act that must be decided by a federal forum (28 U.S.C. § 1331).

Removal is timely. Tyson was served with the Petition on July 20, 2021, and this Notice is being filed within 30 days thereof. *See* 28 U.S.C. § 1446(b)(1); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

## BACKGROUND

This case is brought by seven individuals who allege that they worked at a Tyson meat-processing facility; that they contracted COVID-19 at work; and that they were harmed by the disease. But Plaintiffs' allegations—including allegations of willful misconduct—are inaccurate and incorrect, and Tyson vigorously disputes Plaintiffs' claim. Tyson has worked from the beginning of the pandemic to follow federal workplace guidelines and has invested millions of dollars to provide employees with safety and risk-mitigation equipment. Tyson's efforts to protect its workers while continuing to supply Americans with food continue to this day.

Removal is proper because complete diversity exists, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Additionally, as recently confirmed by both the Northern and Eastern Districts of Texas in cases involving materially identical issues, removal is also proper because this case seeks to countermand federal directions Tyson received to assist the federal government in its efforts to ensure that the greatest national health crisis in a century would not also spiral into a national food shortage. *See Wazelle v. Tyson Foods, Inc.*, No. 2:20-CV-203-Z, 2021 WL 2637335 (N.D. Tex. June 25, 2021); *Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021).[1]

---

[1] One court in the Eastern District acknowledged the rulings in *Fields* and *Wazelle* but reached a different result in *Glenn v. Tyson Foods, Inc.*, No. 9:20-CV-184 (E.D. Tex. Aug. 12, 2021). But that decision does not change the analysis or result here, for several reasons. First and foremost, diversity jurisdiction was not asserted or addressed as a ground for removal in *Glenn*. Because removal for diversity under 28 U.S.C. § 1332 is undeniably proper, the analysis need not reach the federal officer or federal question arguments. However, defendant believes the well-reasoned decisions

## ARGUMENT

### I.    This Court has diversity jurisdiction under 28 U.S.C. § 1332(a).

Removal is proper under 28 U.S.C. § 1332.

The amount in controversy exceeds $75,000, exclusive of interest and costs. [*See* Pet. ¶ 28 ("Plaintiffs affirmatively state that they seek damages in excess of $1,000,000 . . . .")]

Complete diversity exists. Plaintiffs are citizens of Texas. [Pet. ¶¶ 6-12] Tyson Foods, Inc. is a corporation. For the purposes of diversity jurisdiction, a corporation is a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Tyson is incorporated under the laws of Delaware and has its principal place of business in Arkansas. For purposes of diversity jurisdiction, it is therefore a citizen of both Delaware and Arkansas. Because Plaintiffs are citizens of Texas, while Tyson is a citizen of Delaware and Arkansas, complete diversity exists. Removal is thus proper under 28 U.S.C. § 1332.[2]

Additionally, Removal is also proper on the independent bases described below.

### II.    Federal officer removal is proper under 28 U.S.C. § 1442(a)(1).

Under 28 U.S.C. § 1442(a)(1), a civil action may be removed to federal court if the action is asserted against a person acting under the direction of a federal officer:

---

of the *Fields* and *Wazelle* courts confirming federal officer jurisdiction should control if the court finds it needs to consider that issue.

[2] As the named Defendant, Tyson Foods, Inc. timely removes this matter to federal court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442, and 1446. However, Tyson Fresh Meats, Inc. is the entity that employed Plaintiffs. Tyson Fresh Meats, Inc. is incorporated under the laws of Delaware, and its principal place of business is in South Dakota. Thus, in the event that Plaintiffs amend their pleadings to name the Tyson entity that employed them, complete diversity will also exist between Tyson Fresh Meats, Inc. and Plaintiffs.

> A civil action . . . that is against or directed to any of the following may be removed . . . :
>
> (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1) (emphasis added).

Here, federal officer removal is proper because (1) Tyson "acted pursuant to a federal officer's directions," (2) "the charged conduct is connected or associated with an act pursuant to a federal officer's directions," (3) Tyson has "a colorable federal defense," and (4) Tyson "is a 'person' within the meaning of the statute." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc); *see also Wazelle*, 2021 WL 2637335; *Fields*, 2021 WL 510620.

**Federal Direction**. On March 13, 2020, the President "proclaim[ed] that the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020."[3] The federal government proceeded to devote significant effort to combating the pandemic and its potentially catastrophic effects, enlisting both public and private entities in its efforts to ensure that the rapid spread of the disease would not disrupt the nation's critical infrastructure. A particular focus of that effort was the protection of the nation's food supply.

This "critical infrastructure" designation derives from the Critical Infrastructure Protection Act passed after 9/11, *see* 42 U.S.C. § 5195c(e), which instructed the U.S. Department of Homeland Security to develop plans to protect designated "critical infrastructure" in the event of future disasters. "Food and Agriculture" is one of the sixteen recognized "sectors" of critical infrastructure and is subject to a 2013 Presidential Policy Directive intended to "advance[] a national unity of effort to

---

[3] https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

strengthen and maintain secure, functioning, and resilient critical infrastructure."[4] Coordinating protection of the Food and Agriculture Sector has been assigned to the U.S. Departments of Agriculture and Health and Human Services, which have an extensive plan[5] "to protect against a disruption anywhere in the food system that would pose a serious threat to public health, safety, welfare, or to the national economy."[6]

The Defense Production Act ("DPA"), 50 U.S.C. § 4501 *et seq.*, provides the federal government with additional authority. The DPA grants the President authority to "control the general distribution of any material in the civilian market" that the President deems "a scarce and critical material to the national defense." *Id.* § 4511(b). The Critical Infrastructure Protection Act expressly cross-references the DPA and characterizes the emergency preparedness activities that both statutes contemplate as part of the "national defense." *See* 42 U.S.C. § 5195a(b). The statutes vest the President with ample authority to direct the operation of critical infrastructure like the distribution of meat and poultry to protect the national food chain—a point that the President underscored shortly after declaring a national emergency. *See Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing*, The White House (Mar. 18, 2020), https://bit.ly/2Nh91XZ ("We'll be invoking the Defense Production Act, just in case we need it.").

From the time of President Trump's disaster declaration on March 13, Tyson was in close contact with federal officials regarding continued operations as critical infrastructure and acting at the direction of those officials. For example, on March 15

---

[4] https://obamawhitehouse.archives.gov/the-press-office/2013/02/12/presidential-policy-directive-critical-infrastructure-security-and-resil

[5] https://www.cisa.gov/critical-infrastructure-sectors

[6] https://www.cisa.gov/sites/default/files/publications/nipp-ssp-food-ag-2015-508.pdf at 13.

(just two days after declaring a national emergency), in response to significant hoarding of food and other items, the President personally met with Tyson and other food industry companies to convey that they would thereafter be "working hand-in-hand with the federal government" to ensure that "food and essentials are constantly available," and that food suppliers would "work 24 hours around the clock" to achieve that goal.[7]

The next day, on March 16, the President reinforced this obligation to aid the federal government by issuing "Coronavirus Guidelines" emphasizing that employees in "critical infrastructure industr[ies]"—including companies like Tyson that are essential to maintaining food-supply chains and ensuring the continued health and safety of all Americans—have a "special responsibility" and "should follow CDC guidance to protect [employees'] health at work." Exec. Office of Pres., *The President's Coronavirus Guidelines for America* at 2 (Mar. 16, 2020).[8]

Over the next weeks, Tyson was in frequent contact with federal officers regarding the best way to safely continue operations, in particular with the Department of Agriculture's Food Safety Inspection Service ("FSIS"). In fact, FSIS employees were on-site at Tyson's facilities, and Tyson's employees carried letters identifying them as "critical infrastructure" workers, so that those employees could explain their exemption from local lockdowns should any authorities question them.

Federal officials also continued to emphasize the need for companies in the Food and Agriculture Sector to keep operating pursuant to unified, federal guidance. For example, in an April 7 statement, Vice President Pence stressed that "we need [food industry workers] to continue, as a part of what we call our critical

---

[7] https://www.foodbusinessnews.net/articles/15621-trump-meets-with-food-company-leaders

[8] https://trumpwhitehouse.archives.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf

infrastructure, to show up and do your job and know that we're going to continue to work tirelessly in working with all of your companies to make sure that that workplace is safe."[9] Congress even appropriated supplemental funding to FSIS to accommodate the continued presence of FSIS at facilities, including Tyson's facilities, during the pandemic. The Department of Agriculture and Federal Emergency Management Agency ("FEMA") worked to provide Tyson and federal workers at Tyson's facilities with the necessary personal protective equipment to continue to operate, and the Department of Transportation provided special status for transportation workers, including Tyson truck drivers delivering meat and poultry, to operate during the pandemic and provide much needed food to restock stores during the emergency.

But notwithstanding the close collaboration between Tyson and federal officials to safely continue operations, state and local officials began asserting contradictory authority with respect to meat and poultry processing facilities. Those state actions led to an Executive Order re-emphasizing federal supremacy with respect to meat and poultry facilities. On April 28, President Trump expressly invoked his authority under the Defense Production Act ("DPA") and again directed that it was federal policy that meat and poultry processing companies continue operating subject to the supervision of the Secretary of Agriculture. *See Food Supply Chain Resources*, 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1. The executive order states in relevant part:

> It is important that processors of beef, pork, and poultry ("meat and poultry") in the food supply chain **continue operating and fulfilling orders** to ensure a continued supply of protein for Americans. . . . [R]ecent actions in some States have led to the complete closure of some large processing facilities.

---

[9] https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-april-7-2020/

> \*     \*     \*
>
> Such closures **threaten the continued functioning** of the national meat and poultry supply chain, undermining critical infrastructure during the national emergency.
>
> \*     \*     \*
>
> [T]he Secretary of Agriculture shall take all appropriate action . . . to **ensure that meat and poultry processors continue operations** consistent with the guidance for their operations jointly issued by the CDC and OSHA.

*Id.* (emphases added).

Consistent with the *Food Supply Chain Resources* executive order and the prior directives, the Secretary of Agriculture then promptly issued two letters: one to meat and poultry processing companies directing them to continue operating pursuant to the federal directives, and one to state and local officials across the nation reiterating their obligation to work with the Secretary to ensure meat and poultry processing companies' compliance with federal directives. *See* U.S. Dep't of Agriculture, Press Release No. 0243.20 (May 6, 2020) (announcing that the Secretary had issued a "Letter to Governors" and "Letter to Stakeholders").[10] The Secretary's Letter to Stakeholders again emphasized that the "Nation's meat and poultry processing facilities and workers play an integral role in the continuity of our food supply chain." U.S. Dep't of Agriculture, Letter to Stakeholders (May 5, 2020).[11]

The U.S. Department of Agriculture also entered into a Memorandum of Understanding with the U.S. Food and Drug Administration ("FDA") setting forth the

---

[10] https://www.usda.gov/media/press-releases/2020/05/06/secretary-perdue-issues-letters-meat-packing-expectations

[11] Letter from Sonny Perdue, Sec'y of Agric., *Re: Executive Order 13917 Delegating Authority Under the Defense Production Act with Respect to the Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19* (May 5, 2020).

respective roles of each agency in utilizing the DPA to regulate food producers during the COVID-19 outbreak. *See Memorandum of Understanding Between FDA and USDA Regarding the Potential Use of the Defense Production Act with Regard to FDA-Regulated Food During the COVID-19 Pandemic* (May 18, 2020).[12] Notably, the agreement reiterated that "actions by States or localities could lead to the closure of food resource facilities," and such closures "could threaten the continued functioning of the national food supply chain, undermining critical infrastructure during the national emergency." *Id.* at 1-2.

Accordingly, Tyson was operating its facilities—including the Amarillo facility—"under the direction of multiple federal agencies" as part of the federal "critical-infrastructure designation" "since [the declaration of a national emergency on] March 13, 2020," *Fields*, 2021 WL 510620, at *3 & n.1, and Tyson "exhibited 'an effort to help assist, or carry out, the duties and tasks of the federal superior.'" *Wazelle*, 2021 WL 2637335, at *4 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007)). As such, Tyson was "acting under" the direction of a federal officer, 28 U.S.C. § 1442(a)(1), and "helping the Government to produce an item that it needs" for the national defense, *Watson*, 551 U.S. at 153; *see also Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989) (holding that "the reach of section 1442(a)(1) extends to private persons . . . who act under the direction of federal officers," including companies ordered to "facilitate" or "offer[] technical assistance" to federal agents exercising statutory authority).

Indeed, it is well established that private providers to the government of military products (*see, e.g.*, *Latiolais*, 951 F.3d at 289-90; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016)) or health benefits (*see, e.g.*, *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 354 (5th Cir. 2019)) can invoke

---

[12] https://www.usda.gov/sites/default/files/documents/mou-between-fda-usda-dpa.pdf

federal officer removal. Here, Tyson was acting at the direction of, and hand-in-hand with, federal officers in a time of emergency to provide the food security that the government recognized it could not accomplish alone. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (explaining that "the Supreme Court has approved removal" in cases where "defendants work[ed] hand-in-hand with the federal government to achieve a task that furthers an end of the federal government").

And with respect to the DPA in particular, the President made clear on March 24 that companies were acting in the shadow of potential DPA orders: "The Defense Production Act is in full force, but haven't had to use it because no one has said NO!"[13] The Fifth Circuit has recognized that such dynamics amount to government orders and actions—that "the threat of mandatory powers would be used as a 'big stick' to induce voluntary cooperation," and that the DPA's "broad authority" can be exercised through either "formal, published regulations" or "informal and indirect methods of securing compliance." *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 992-93, 998 (5th Cir. 1976). That is especially true in a time of emergency because "a cumbersome and inflexible administrative process is antithetical to the pressing necessities." *Id.* at 998. Just like a private chauffeur enlisted by a federal officer to drive in hot pursuit of a fleeing suspect, here Tyson was enlisted to carry out paramount government objectives in a fast-moving crisis. *See Maryland v. Soper*, 270 U.S. 9, 30 (1926) (chauffeur acting under orders of federal officers had "the same right to the benefit of [federal-officer removal] as they"). In both cases, there is federal direction even though there is no time for a formal deputization. Indeed, the President formally invoked the DPA on April 28 only in response to state and local governments' failure to heed the Executive Branch's earlier directives to meat and poultry

---

[13] Doina Chiacu, *Trump Administration Unclear over Emergency Production Measure to Combat Coronavirus*, Reuters (March 24, 2020), http://reut.rs/3rS3MN5.

processors. Thus, "[t]o the extent some of the federal direction may have been more 'informal,' including emails, phone calls, and weekly meetings with FSIS and other federal officials regarding how to maintain operations safely, that informality does not change the fact that [Tyson was] still receiving and following federal direction." *Wazelle*, 2021 WL 2637335, at *4 n.3.

Consistent with the finding of federal officer removal in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998), *holding modified by Latiolais*, 951 F.3d 286, the federal government here (1) provided "detailed specifications" governing Tyson's ongoing operations—through the federal direction that the CDC and OSHA guidelines would govern operations, and promulgation of exceedingly detailed guidelines; and (2) exercised "on-going supervision" of those operations through multiple federal officials, *id*. at 399-400, including the Secretary of Agriculture, who was delegated power by the Department of Homeland Security to preserve the Food and Agriculture Sector during the pandemic and by the President to "take all appropriate action . . . to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA." 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1. The Petition challenges Tyson's failure to stop work at the Amarillo facility and the various measures that were taken at the facility. [*See, e.g.*, Pet. ¶¶ 15 (alleging "[d]espite the stay-at-home order [issued by the Governor of Texas], Plaintiffs were required to continue working at the [Amarillo facility]"), 16 (alleging Tyson "failed to take adequate precautions to protect the workers" at the facility), 21(a)-(i)] But those alleged actions were taken pursuant to the authority, orders, detailed regulation, and supervision of federal officers, up to and including the President and Vice President. Tyson was therefore "acting under" federal officers, and is entitled to have this case heard in federal court. 28 U.S.C. § 1442(a)(1); *Fields*, 2021 WL 510620, at *3 ("[B]ased on the critical-infrastructure designation, [Tyson was] 'acting under' the directions of federal officials when the federal

government announced a national emergency on March 13."); *Wazelle*, 2021 WL 2637335, at *5 ("[Tyson was] 'acting under' the directions of federal officials" from the time of the national emergency declaration.).

**Connection or Association**. Following the text of 28 U.S.C. § 1442(a)(1), it suffices if the lawsuit targets actions Tyson took "relating to" the directions of federal officers, which requires that Plaintiffs' allegations be "connected or associated with" Tyson's actions taken "pursuant to a federal officer's directions." *See Latiolais*, 951 F.3d at 296. Here, there is a direct connection between the Petition's allegations and the actions Tyson took at the direction of federal officers. *See Wazelle*, 2021 WL 2637335, at *5; *Fields*, 2021 WL 510620, at *4.

As noted above, the Petition alleges that Tyson is liable in tort for allowing employees to continue working given the supposedly high risk of them contracting COVID-19 (*e.g.*, Pet. ¶¶ 15-16), even though those facilities were operating as critical infrastructure under federal directions during a national emergency. Likewise, the Petition challenges specific measures that Tyson adopted or allegedly failed to adopt in response to the coronavirus. [*See, e.g.*, Pet. ¶ 21(a)-(i)] But the measures that Tyson took were at the direction of federal officers to continue safe operations as critical infrastructure during a national emergency. Any dispute that Tyson should have operated differently from the federal directions it received in a national emergency should be for the "federal—not state—courts to answer." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008) (federal courts must resolve "whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government") (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

**Colorable Federal Defenses**. Tyson has at least the following federal defenses to the claim in the Petition.

- **Express preemption under the Federal Meat Inspection Act ("FMIA").**
  The FMIA's express preemption clause preempts state-law requirements
  that are "in addition to" or "different than" the rigorous and extensive fed-
  eral requirements under the statute. *See* 21 U.S.C. § 678; *see also, e.g.*, 9
  C.F.R. § 416.5(c) (setting federal requirements under the FMIA regarding
  cleanliness, protective attire, and "[d]isease control"). As construed by the
  Supreme Court, "[t]he FMIA's preemption clause sweeps widely" and "pre-
  vents a State from imposing any additional or different—even if non-con-
  flicting—requirements that fall within the scope of the Act." *Nat'l Meat
  Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012). Plaintiffs here would use state
  tort law to impose additional and different requirements. *See Wazelle*, 2021
  WL 2637335, at *2-3 (holding that Tyson set forth a colorable federal de-
  fense under the FMIA because "this case arose in the unique context of a
  global pandemic," and "[w]orkplace conditions and procedures related to
  disease prevention implicate food safety, which could bring Plaintiffs'
  claims under the ambit of the FMIA"); *Fields*, 2021 WL 510620, at *5 (hold-
  ing that Tyson "put forth a colorable federal defense under the [substan-
  tially similar preemption provision of the Poultry Products Inspection Act],
  thereby satisfying the federal officer removal test laid out in *Latiolais*").

- **Preemption and immunity under the DPA and the extensive federal di-
  rectives.** Plaintiffs' claim is also preempted by the DPA and the extensive
  federal supervision and control under which Tyson was operating. Congress
  enacted the DPA to preserve "the security of the United States" by ensuring
  "the ability of the domestic industrial base to supply materials and services
  for the national defense and to prepare for and respond to . . . natural or
  man-caused disasters," and in particular to "provide for the protection and
  restoration of domestic critical infrastructure operations under emergency

conditions." 50 U.S.C. § 4502(a)(1), (a)(2)(C). The DPA grants the President wide latitude to "take appropriate steps to maintain and enhance the domestic industrial base," *id.* § 4502(a)(4), including "to allocate materials, services, and facilities in such manner, upon such conditions, and to such extent as he shall deem necessary or appropriate" during a national emergency, *id.* § 4511(a). This broad grant of authority preempts any attempt by a state to impose its own regulations on "domestic critical infrastructure" industries when the President has done so under the DPA, *id.* § 4502(a)(2)(C); *see also Crosby v. National Foreign Trade Council*, 530 U.S. 363, 376 (2000), and provides an express defense against suits like this for actions taken in compliance with orders issued under the DPA, 50 U.S.C. § 4557. The Petition here seeks to impose state regulation that conflicts with the President's express directives under the DPA requiring Tyson to assist the nation during a national disaster by (1) continuing to operate (2) pursuant to federal operational requirements.

**Tyson is a "person."** Section 1442(a)(1) applies to corporations. *See Latiolais*, 951 F.3d at 291; *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012) (citing *Watson*, 551 U.S. at 152-53) ("[T]he 'person' contemplated by the federal officer removal statute includes corporations.").

### III.    The Court also has federal question jurisdiction.

This case is properly removed under 28 U.S.C. § 1331 because it "aris[es] under" federal law. *See Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721-22 (5th Cir. 2017); *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir.), *cert. denied*, 141 S. Ct. 621 (2020). Although Plaintiffs' causes of action are styled as state-law claims, this Court has federal question jurisdiction because the claims (1) "necessarily" raise an issue of federal law that is (2) "actually disputed" and (3) "substantial," and (4) "which a federal forum may

entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see also Wullschleger*, 953 F.3d at 521 (removal is proper where claim pleaded under state law "implicat[es] a disputed and substantial federal issue").

**Federal issues are necessarily raised.** The Petition necessarily raises multiple, substantial federal issues. The entire thrust of the Petition is that Tyson should not have complied with express federal directives related to the national defense—*i.e.*, should have shut down or slowed production (*e.g.*, Pet. ¶¶ 15-16, 21(b), 21(i)); should have taken more or different measures than were mandated by the federal directives (*e.g.*, *id.* ¶¶ 16, 21(c)-(d) & (f)-(i)); or failed to comply with federal law by allegedly failing to take certain precautions (*e.g.*, *id.* ¶ 21(e)). These issues directly implicate the "uniquely federal interest" in "civil liabilities" arising from the government's defense priorities determinations, *Boyle v. United Technologies Corp.*, 487 U.S. 500, 505-07 (1988), and none of these issues can "be resolved without a determination" and "construction of [the] federal law[s]" under which Tyson was operating. *Bd. of Comm'rs of Se. La.*, 850 F.3d at 723.

To the contrary, these federal issues are plainly and necessarily raised by the Petition (*e.g.*, Pet. ¶ 21(e) (alleging Tyson "[f]ailed to follow guidelines set forth by the . . . CDC")), and they permeate every aspect of Plaintiffs' claim—from the measures Tyson allegedly adopted or failed to adopt (*e.g.*, *id.* ¶ 21(c)–(e) (challenging Tyson's provision of PPE, implementation of social distancing, and failure to follow CDC guidelines)), to Tyson's continued operation despite local authorities imposing a stay-at-home order (*e.g.*, *id.* ¶¶ 15 (challenging Tyson's alleged requirement that Plaintiffs "continue working" "[d]espite the [Texas] stay-at-home order"), 21(b) (alleging that "it was no longer safe" to work at the facility)). Having "elected to premise" their claim

- 15 -

on "interpretations of federal law," Plaintiffs cannot avoid this Court's jurisdiction. *Wullschleger*, 953 F.3d at 522.

It "would be impossible to determine whether [Tyson] breached" a duty to Plaintiffs "without deciding whether [Tyson's] actions were governed by a valid" directive from the federal government. *Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170 (5th Cir. 2012). Having elected to employ federal law "as the basis for [state] tort liability," Plaintiffs are subject to this Court's jurisdiction. *Bd. of Comm'rs of Se. La.*, 850 F.3d at 723.

Although Plaintiffs have "tried to frame [their] claims as sounding only in state law," (*e.g.*, Pet. ¶ 4 (asserting that "Plaintiffs bring their claims under Texas state law and do not seek to make any claims that are pre-empted by federal law")), Plaintiffs "may not defeat removal by omitting to plead necessary federal questions in [the] complaint." *Hughes*, 478 F. App'x at 171 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)). Plaintiffs' avoidance of explicit reliance on federal law is irrelevant because "any judicial consideration of [Plaintiffs'] claims necessarily implicates substantial questions of federal law." *Id.*

**The federal issues are "substantial."** The Petition implicates federal imperatives of the highest and broadest importance: coordination of national disaster relief and the maintenance of infrastructure "essential to the national defense." 50 U.S.C. § 4511(b); *see also Scrogin v. Rolls-Royce Corp.*, No. 3:10cv442 (WWE), 2010 WL 3547706, at *3 (D. Conn. Aug. 16, 2010) ("[P]laintiffs' state tort claims give rise to serious federal interests in the government procurement contract and military operations."); *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1201-02 (M.D. Fla. 2006) (holding that "the federal issues [were] quite substantial" where national defense and procurement were implicated).

- 16 -

Moreover, "the validity of [Plaintiffs'] claims would require that conduct subject to an extensive federal . . . scheme is in fact subject to implicit restraints that are created by state law." *Bd. of Comm'rs of Se. La.*, 850 F.3d at 724. The "implications for the federal regulatory scheme" of such liability—particularly where the federal scheme relates to critical infrastructure during a national emergency—"would be significant." *Id.*; *see also Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 441 (5th Cir. 2019) (noting that the substantiality requirement is satisfied where a case "put[s] the legality of a federal action in question, in a manner that would have broader ramifications for the legal system"). Thus, there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum" for these claims. *Grable*, 545 U.S. at 313; *see also Rose v. SLM Fin. Corp.*, Civ. A. No. 3:05CV445, 2007 WL 674319, at *4 (W.D.N.C. Feb. 28, 2007) ("Where a federal regulatory scheme requires private parties to undertake certain actions in order to comply with the law, the federal courts necessarily have a serious interest in examining the scope of liability that might arise as a result.").

**Actual dispute.** The federal interests are also actually disputed. *See Bd. of Comm'rs of Se. La.*, 850 F.3d at 723 (finding federal issues actually in dispute where the parties disagreed as to whether the defendants complied with federal law); *Wullschleger*, 953 F.3d at 522 (finding federal issues actually in dispute where the plaintiffs "explicitly claim[ed] that defendants violated the FDCA, were non-compliant with FDA guidance, and that their refusal to [seek] FDA review was improper"). The Petition seeks to impose state-law liability on Tyson for actions taken pursuant to federal directions, and the Petition's overarching theory is that Tyson allegedly failed to comply with federal directions in some respects and should have exceeded (or otherwise deviated from) federal directions in other respects. These issues—what was required under the *federal* orders and whether states can override the *federal* orders—constitute the central dispute in this case.

**Balance of responsibilities.** Finally, exercising jurisdiction over this case will not disturb—and, in fact, will preserve—the congressionally approved balance of federal and state judicial responsibilities. The U.S. has not faced a pandemic like this since the Spanish flu more than a century ago, and the emergency federal powers and planning directives are by their nature limited to a narrow set of circumstances. As explained above, Tyson's facilities were designated as "critical infrastructure" essential to the national defense and directed to continue operating in this national emergency. Moreover, through the DPA, Congress delegated to the President "an array of authorities" to "take appropriate steps to maintain" critical infrastructure—because the "national defense" and "security of the United States" depend upon it. 50 U.S.C. § 4502(a)(1), (4).

Accordingly, there is a "clear interest" in "the availability of a federal forum" for this case, which directly challenges the Executive Branch's orders related to this emergency under the DPA and other federal statutes and federal directions related to those orders. *Grable*, 545 U.S. at 319-20; *see also Bd. of Comm'rs of Se. La.*, 850 F.3d at 725 (holding that jurisdiction was appropriate because "the scope and limitations" of federal framework were at stake, and deciding "whether that framework may give rise to state law claims as an initial matter will ultimately have implications for the federal docket one way or the other"). And exercising jurisdiction over Plaintiffs' claims "would not materially affect, or threaten to affect, the normal currents of litigation," *Grable*, 545 U.S. at 319-20, given the "rare" circumstances here.

## IV. Tyson has satisfied the procedural requirements for removal.

Venue is proper in this district under 28 U.S.C. §§ 124(a) and 1441(a) because the United States District Court for the Northern District of Texas, Amarillo Division, embraces the county in which the state court action is now pending.

A civil cover sheet and a supplemental civil cover sheet are being filed concurrently with this Notice of Removal. LR 81.1(a)(1), (2). An index of all documents that

clearly identifies each document and indicates the date the document was filed in state court, a copy of the docket sheet in the state court action, and each document filed in the state court action are attached hereto. LR 81.1(a)(4); 28 U.S.C. § 1446(a). A separately signed certificate of interested persons that complies with Local Rule 3.1(c) is also being filed concurrently with this notice of removal pursuant to LR 81.1(a)(4)(D).

Tyson will promptly provide written notice of this filing to all adverse parties and will file a copy of this Notice of Removal with the clerk of the state court where this suit is currently pending. 28 U.S.C. § 1446(d).

CONCLUSION

For the foregoing reasons, Tyson respectfully removes this action bearing case number 110469-B-CV, from the 181st Judicial District Court of Potter County, Texas pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442, and 1446.

Dated: August 13, 2021                          Respectfully submitted,


*/s/ Kelly Utsinger*
Kelly Utsinger
Texas Bar No. 20416500
C. Jason Fenton
Texas Bar No. 24087505
**UNDERWOOD LAW FIRM, P.C.**
500 S. Taylor, Suite 1200
Amarillo, Texas 79101
Telephone:  806.376.5613
Facsimile:   806.379.0316
Email: Kelly.Utsinger@uwlaw.com
        Jason.Fenton@uwlaw.com

Christopher S. Coleman
(*pro hac vice* forthcoming)
Jessica L. Everett-Garcia
(*pro hac vice* forthcoming)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  602.351.8000
Facsimile:   602-648.7000
Email: CColeman@perkinscoie.com
           JEverettGarcia@perkinscoie.com

**ATTORNEYS FOR TYSON FOODS,
INC.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served upon all counsel of record through the Court's CM/ECF system and by email, on August 13, 2021, as follows:

Kurt Arnold
Caj Boatright
Roland Christiansen
**ARNOLD & ITKIN LLP**
6009 Memorial Drive
Houston, Texas 77007
karnold@arnolditkin.com
cboatright@arnolditkin.com
rchistensen@arnolditkin.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Kelly Utsinger*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LADARIUS JOHNSON; IRMA LOPEZ; PEDRO LOPEZ; TERRY BRACEY; ROSHAWN POLITE; BRANDI WEST; and BRITTNY ARRIETA, | § § § § § § § § § § § § | |
| Plaintiffs, | | NO. _____ |
| vs. | | |
| TYSON FOODS, INC., | | |
| Defendant. | | |

## INDEX STATE COURT FILINGS

| Date | Description | Page |
|---|---|---|
| | State Court Docket<br>Cause No. 110469-B-CV; Ladarius Johnson et al v. Tyson Foods. Inc in the 181st District Court in and for Potter County Texas | 001-003 |
| 07.09.2021 | Original Petition<br>Cause No. 110469-B-CV; Ladarius Johnson et al v. Tyson Foods. Inc in the 181st District Court in and for Potter County Texas | 004-011 |
| 07.12.2021 | Issuance of Citation Personal Service | 012 |
| 07.20.2021 | Date of Service and Return | 013-014 |

## Case Information

110469-B-CV | LADARIUS JOHNSON, IRMA LOPEZ, PEDRO LOPEZ, TERRI BRACEY, ROSHAWN POLITE, BRANDI WEST, BRITTNY ARRIETA VS. TYSON FOODS, INC.

Case Number
110469-B-CV

Court
181st District Court

Judicial Officer
Frausto, Titiana

File Date
07/09/2021

Case Type
Other Injury or Damage

Case Status
Pending

## Party

Plaintiff
Johnson, Ladarius

Active Attorneys ▾
Lead Attorney
ARNOLD, KURT B.
Retained

Plaintiff
Lopez, Irma

Active Attorneys ▾
Lead Attorney
ARNOLD, KURT B.
Retained

Plaintiff
Lopez, Pedro

Active Attorneys ▾
Lead Attorney
ARNOLD, KURT B.
Retained

Plaintiff
Bracey, Terri

Active Attorneys ▾
Lead Attorney

Johnson et al v Tyson - State Court Docket and Filings 00001

ARNOLD, KURT B.
Retained

---

Plaintiff
Polite, Roshawn

Active Attorneys ▼
Lead Attorney
ARNOLD, KURT B.
Retained

---

Plaintiff
West, Brandi

Active Attorneys ▼
Lead Attorney
ARNOLD, KURT B.
Retained

---

Plaintiff
Arrieta, Brittny

Active Attorneys ▼
Lead Attorney
ARNOLD, KURT B.
Retained

---

Defendant
Tyson Foods, Inc.

## Events and Hearings

07/09/2021 PLAINTIFF'S ORIGINAL PETITION (OCA) ▼

Comment
Original Petition

Johnson et al v Tyson - State Court Docket and Filings 00002

07/09/2021 REQUEST FOR ISSUANCE ▾

Comment
Request for Issuance (Tyson Foods-to be emailed)

07/12/2021 ISSUE - CITATION PERSONAL SERVICE

07/26/2021 RECORD CITATION ▾

Comment
served Tyson Foods, agent CT Corporation System on 7/19/2021, fees not shown, Anthony Collins

Johnson et al v Tyson - State Court Docket and Filings 00003

Filed
Stephnie Menke
District Clerk
7/9/2021 4:12 PM
Potter County, Texas
By KG Deputy

CAUSE NO. **110469-B-CV**



| | | |
|---|---|---|
| Ladarius Johnson, Irma Lopez, Pedro Lopez, | § | IN THE DISTRICT COURT OF |
| Terri Bracey, Roshawn Polite, Brandi West, | § | |
| Brittny Arrieta, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| vs. | § | POTTER COUNTY, TEXAS |
| | § | |
| Tyson Foods, Inc. | § | |
| | § | |
| *Defendant* | § | **181st** _____TH JUDICIAL DISTRICT |
| | § | |

## ORIGINAL PETITION

Plaintiffs, Ladarius Johnson, Irma Lopez, Pedro Lopez, Terri Bracey, Roshawn Polite, Brandi West, Brittny Arrieta ("Plaintiffs") complain of Tyson Foods, Inc. ("Tyson"); and will respectfully show the Court the following:

### I.

#### NATURE OF ACTION

1.      This is an action to recover damages after Plaintiffs contracted COVID-19 while working at Tyson's meatpacking plant in Amarillo, Texas.

### II.

#### DISCOVERY

2.      Discovery in this matter may be conducted under Level 2 of the Texas Rules of Civil Procedure.

### III.

#### JURISDICTION AND VENUE

3.      Plaintiffs' claims arise under the laws of Texas.

4.      The Court has jurisdiction over this case because Plaintiffs seek damages within

the jurisdictional limits of this Court. Additionally, Plaintiffs bring their claims under Texas state law and do not seek to make any claims that are pre-empted by federal law. Put differently, Plaintiffs allege that Defendants failed to provide them with a safe place to work and failed to follow appropriate guidelines and recommendations to avoid the spread of COVID-19.

5.    Venue is proper in this County pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(1) because the acts or omissions giving rise to this suit occurred in this County.

## IV.

### PARTIES

6.    Plaintiff Ladarius Johnson is a resident of Texas. Plaintiff worked at Tyson's Amarillo, Texas facility and contracted COVID-19 because of the unsafe working conditions at the Amarillo, Texas facility.

7.    Plaintiff Irma Lopez is a resident of Texas. Plaintiff worked at Tyson's Amarillo, Texas facility and contracted COVID-19 because of the unsafe working conditions at the Amarillo, Texas facility.

8.    Plaintiff Pedro Lopez is a resident of Texas. Plaintiff worked at Tyson's Amarillo, Texas facility and contracted COVID-19 because of the unsafe working conditions at the Amarillo, Texas facility.

9.    Plaintiff Terri Bracey is a resident of Texas. Plaintiff worked at Tyson's Amarillo, Texas facility and contracted COVID-19 because of the unsafe working conditions at the Amarillo, Texas facility.

10.    Plaintiff Roshawn Polite is a resident of Texas. Plaintiff worked at Tyson's Amarillo, Texas facility and contracted COVID-19 because of the unsafe working conditions at the Amarillo, Texas facility.

Johnson et al v Tyson - State Court Docket and Filings 00005

11.    Plaintiff Brandi West is a resident of Texas. Plaintiff worked at Tyson's Amarillo, Texas facility and contracted COVID-19 because of the unsafe working conditions at the Amarillo, Texas facility.

12.    Plaintiff Brittny Arrieta is a resident of Texas. Plaintiff worked at Tyson's Amarillo, Texas facility and contracted COVID-19 because of the unsafe working conditions at the Amarillo, Texas facility.

13.    Defendant Tyson Foods, Inc. ("Tyson") is a foreign corporation that does a substantial amount of business in Texas. Specifically, Tyson owns and operates the Tyson facility located in Center, Texas. Thus, the Court has specific jurisdiction over Tyson for its negligent conduct that occurred in the State of Texas. Tyson can be served through its registered agent: CT Corporation System, at 1999 Bryan St., Ste. 900 Dallas, Texas 75201.

**V.**

**FACTS**

14.    Plaintiffs worked at the Tyson meatpacking plant in Amarillo, Texas. In spring of 2020, the COVID-19 pandemic began sweeping the United States. Many States and Counties began implementing proactive safety measures to prevent the spread of COVID-19.

15.    In Texas, Governor Abbott issued a stay-at-home order for the State of Texas that took effect on April 2, 2020. Despite the stay-at-home order, Plaintiffs were required to continue working at the Tyson meatpacking plant in Amarillo, Texas after April 2, 2020. Plaintiffs also worked at the Amarillo, Texas meatpacking plant prior to April 2, 2020.

16.    Both prior to April 2, 2020, and after April 2, 2020, Tyson failed to take adequate precautions to protect the workers at its meatpacking facilities, including the Amarillo, Texas meatpacking facility. Even when the rest of the country and the State of Texas were taking

3

significant precautions to prevent the spread of COVID-19 even prior to April 2, 2020, Tyson did not do the same thing. And even after April 2, 2020, Tyson still required its employees to come to work and did not provide adequate precautions or protections to help protect its employees from COVID-19.

17.    Thousands of Tyson employees have been exposed to COVID-19 at Tyson's meatpacking facilities. Upon information and belief, at least 7,100 Tyson employees have contracted COVID-19, and at least 24 employees have died as a result of exposure to COVID-19 at Tyson's meatpacking facilities.

18.    In Texas, Tyson chose not to provide its employees with workers compensation insurance. Instead, Tyson has implemented a program called WISP or Workplace Injury Settlement Program wherein Tyson pressures employees to sign releases before providing injury benefits. In many cases, Tyson then pays limited, if any benefits, once its employees have signed away their right to sue.

19.    Tyson's conduct, effectuated through the named Defendants in this lawsuit, was negligent and grossly negligent and was the cause of the underlying incident.

## VI.

### CAUSES OF ACTION

**A.  *Negligence and Gross Negligence.***

20.    Plaintiffs repeat and re-alleges each allegation contained above.

21.    Defendant is negligent and grossly negligent for the following reasons:

    a.    Failed to provide a safe work environment.

    b.    Requiring Plaintiffs to continue working at the meatpacking plant when it was no longer safe to do so due to COVID-19;

4

c.    Failed to provide adequate PPE to the workers at the meatpacking plant;

d.    Failed to implement adequate precautions and social distancing at the meatpacking plant;

e.    Failed to follow guidelines set forth by the WHO and CDC with regard to COVID-19 at the meatpacking plant;

f.    Failed to warn of the dangerous conditions at the meatpacking regarding COVID-19;

g.    Failure to properly train Tyson employees at the meatpacking plant;

h.    Failure to provide adequate medical treatment;

i.    Allowed and required individuals who were infected with COVID-19 to continue to work at the meatpacking plant infecting other individuals; and

j.    Other acts deemed negligent and grossly negligent.

22.    Defendant owed Plaintiffs a legal duty of the foregoing.

23.    Defendant breached these duties, and as a direct and proximate result of Defendant's breaches of duty caused serious bodily injury to Plaintiffs, resulting in the following damages: physical pain, mental anguish, physical impairment, past and future medical expenses, loss of earning capacity, and loss of services. Because of the severity and degree of Plaintiffs' injuries, Plaintiffs' will incur significant future medical expenses as a result of Defendant's negligent and grossly negligent conduct.

24.    Further, Defendant is liable for its grossly negligent conduct. Defendant's actions and/or omissions, when viewed objectively, exposed Plaintiffs to an extreme degree of risk with no regard for the probability and magnitude of the potential harm. Defendant also had actual, subjective awareness of the risk involved, yet chose to proceed in conscious indifference to the

5

rights, safety, and welfare of Plaintiffs. Thus, Plaintiffs are entitled to exemplary damages against Defendant.

## VII.

### DAMAGES

25.    As a result of said occurrences, Plaintiffs sustained severe injuries to their bodies, lungs, and respiratory system in general, which resulted in physical pain, mental anguish, and other medical problems.  Plaintiffs have sustained severe pain, physical impairment, discomfort, mental anguish, and distress.  In all reasonable probability, Plaintiffs' physical pain, physical impairment and mental anguish will continue indefinitely.

26.    Plaintiffs are also entitled to punitive damages because the aforementioned actions of Defendant was grossly negligent.  Plaintiffs' injuries were caused by malicious, willful, reckless, or wanton acts or omissions of Defendant, or alternatively the gross negligence of Defendant's employees, agents or representatives.

## VIII.

### JURY TRIAL

27.    Plaintiffs hereby requests a trial by jury on all claims and submits their jury fee herewith.

## IX.

### PRAYER

28.    Plaintiffs pray that this citation issue and be served upon Defendant in a form and manner prescribed by law, requiring Defendant appear and answer, and that upon final hearing, Plaintiffs have judgment against Defendant in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post-judgment interests, all costs of Court, and all such

Johnson et al v Tyson - State Court Docket and Filings 00009

other relief to which Plaintiffs show themselves justly entitled. As required by Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs affirmatively state that they seek damages in excess of $1,000,000 and prays for relief and judgment, as follows:

a.  Compensatory damages against Defendant;

b.  Actual damages;

c.  Consequential damages;

d.  Pain and suffering;

e.  Exemplary damages;

f.  Past and future mental anguish;

g.  Past and future impairment;

h.  Past and figure disfigurement;

i.  Loss of wages past and future;

j.  Loss of earning capacity;

k.  Interest on damages (pre- and post-judgment) in accordance with law;

l.  Plaintiffs' reasonable attorneys' fees;

m.  Costs of court;

n.  Expert witness fees;

o.  Costs of copies of depositions; and

p.  Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

ARNOLD & ITKIN LLP

*/s/ Kurt Arnold*

_____

Kurt Arnold
SBN:  24036150
karnold@arnolditkin.com
Caj Boatright
SBN: 24036237
cboatright@arnolditkin.com
Roland Christensen
SBN: 24101222
rchristensen@arnolditkin.com
6009 Memorial Drive
Houston, Texas  77007
Tel: 713.222.3800
Fax: 713.222.3850
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFFS**

8

Filed
Stephnie Menke
District Clerk
7/26/2021 10:38 AM
Potter County, Texas
BY PB Deputy

**POTTER COUNTY**

P.O. Box 9570                                                                    Phone: 806-379-2300
Amarillo, Texas 79105-9570            Stephnie Menke, District Clerk            Fax: 806-372-5061
501 S. Fillmore-Suite 1B    http://www.co.potter.tx.us/page/potter.District.Clerk    districtclerk@co.potter.tx.us

THE STATE OF TEXAS
CIVIL

CITATION-PERSONAL SERVICE

CAUSE NO. 110469-B-CV

STYLE: LADARIUS JOHNSON, IRMA LOPEZ, PEDRO LOPEZ, TERRI BRACEY, ROSHAWN POLITE, BRANDI
WEST, BRITTNY ARRIETA VS. TYSON FOODS, INC.

IN AND FOR THE: 181ST DISTRICT COURT


TO: TYSON FOODS, INC. BY SERVING ITS REGISTERED AGENT CT CORPORATION SYSTEM

1999 BRYAN ST STE 900, DALLAS TX  75201


**NOTICE:** YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT
FILE A **WRITTEN ANSWER** WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE
MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS
CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING
A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE
OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30
DAYS AFTER YOU FILE YOUR ANSWER THE CLERK. FIND OUT MORE AT TEXASLAWHELP.ORG.


THE ADDRESS OF THE CLERK IS SHOWN ABOVE. THE PLAINTIFF'S PETITION WAS FILED JULY 09, 2021 IN
THE 181ST DISTRICT COURT LOCATED AT AMARILLO, POTTER COUNTY, TEXAS.


ATTACHED HERETO IS: ORIGINAL PETITION


THE ATTORNEY FOR THE PLAINTIFF IS:

KURT B. ARNOLD                    6009 MEMORIAL DRIVE              713-222-3800
                                 HOUSTON TX  77007



**ISSUED AND GIVEN UNDER MY HAND AND SEAL: JULY 12, 2021**

                                        STEPHNIE MENKE, CLERK OF THE COURT
                                        POTTER COUNTY, TEXAS
                                        (OFFICER'S RETURN FOLLOWS)


                    BY DEPUTY:

                                        ORIGINAL FOR RETURN

P.O. Box 9570                                          Phone: 806-379-2300

**POTTER COUNTY**

Amarillo, Texas 79105-9570              Stephnie Menke, District Clerk                Fax: 806-372-5061

501 S. Fillmore-Suite 1B        http://www.co.potter.tx.us/page/potter.District.Clerk districtclerk@co.potter.tx.us

### RETURN OF SERVICE

CAUSE NO. 110469-B-CV

STYLE: LADARIUS JOHNSON, IRMA LOPEZ, PEDRO LOPEZ, TERRI BRACEY, ROSHAWN POLITE, BRANDI WEST, BRITTNY ARRIETA VS. TYSON FOODS, INC.

IN AND FOR THE: 181ST DISTRICT COURT


CAME TO HAND ON THE _____ DAY OF _____, 20___, AT _____, O'CLOCK ___.M., AND EXECUTED IN _____ COUNTY, TEXAS BY PERSONALLY DELIVERING TO THE NAMED DEFENDANT(S), A TRUE COPY OF THIS CITATION WITH THE DATE OF DELIVERY ENDORSED THEREON, TOGETHER WITH ACCOMPANYING COPY OF ORIGINAL PETITION,IN PERSON, AT THE FOLLOWING TIMES AND PLACES, TO-WIT:

**NAME OF INDIVIDUAL, CORPORATION, OR AGENT SERVED:**

_____

~~SERVICE AFFIDAVIT ATTACHED~~

**ADDRESS:** _____

**DATE:** _____, 20___ AT_____ **O'CLOCK ___.M.**


AND NOT EXECUTED AS TO THE DEFENDANT(S),

_____

THE DILIGENCE USED IN FINDING SAID DEFENDANT(S) BEING:

_____

AND THE CAUSE OR FAILURE TO EXECUTE THIS PROCESS IS:

_____

AND THE INFORMATION RECEIVED AS TO THE WHEREABOUTS OF SAID DEFENDANT(S) BEING:

_____
_____

**FEES:**

SERVING CITATION $_____

                                        _____, SHERIFF
                                        _____, COUNTY, TEXAS
                        BY: _____ , DEPUTY
                                        _____, AFFIANT

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

IN ACCORDANCE WITH RULE 107: THE OFFICER OR AUTHORIZED PERSON WHO SERVES, OR ATTEMPTS TO SERVE, A CITATION SHALL SIGN THE RETURN.  THE RETURN MUST EITHER BE VERIFIED OR BE SIGNED UNDER PENALTY OF PERJURY. A RETURN SIGNED UNDER PENALTY OF PERJURY MUST CONTAIN THE STATEMENT BELOW IN SUBSTANTIALLY THE FOLLOWING FORM:

"MY NAME IS _____, MY DATE OF BIRTH IS_____, AND MY ADDRESS IS _____.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed in _____County, State of_____, on the _____day of _____, 20_____.


                        _____
                        Declarant/Authorized Process Server
                        _____
                        ID # & expiration of certification

## AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| **State of Texas** | County of Potter | 181st Judicial District Court |

Case Number: 110469-B-CV

Plaintiff:
**Ladarius Johnson, Irma Lopez, Pedro Lopez, Terri Bracey, Roshawn Polite, Brandi West, Brittny Arrietea**

vs.

Defendant:
**Tyson Foods, Inc.**

For:
Kurt Arnold
Arnold & Itkin, LLP
6009 Memorial Drive
Houston, TX 77007

Received by Lexitas on the 19th day of July, 2021 at 8:03 am to be served on **Registered Agent for Tyson Foods, Inc. CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.**

I, Anthony Collins, being duly sworn, depose and say that on the **20th day of July, 2021** at **1:30 pm, I:**

Executed service by hand delivering a true copy of the **Citation, Copy of Plaintiff's Original Petition** to: George **Martinez**, an authorized acceptance agent employed by **Registered Agent CT Corporation System, Inc.**, who is authorized to accept service of process for **Tyson Foods, Inc.**, at the address of: **1999 Bryan Street, Suite 900, Dallas, TX 75201**, and informed said person of the contents therein, in compliance with state statutes.

"I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the judicial circuit in which the process was served. I have personal knowledge of the facts set forth in this affidavit, and they are true and correct."

Anthony Collins
PSC-357 Expires 12/31/2021

Subscribed and Sworn to before me on the 21st day of July, 2021 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

**Lexitas**
4299 San Felipe
Suite 350
Houston, TX 77027
(713) 375-0121

JON PEKAR
My Notary ID # 124424900
Expires January 11, 2023

Our Job Serial Number: ONT-2021003589
Ref: 359993

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.2c



Johnson et al v Tyson - State Court Docket and Filings 00014